WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paula Hughes,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-21-00541-PHX-MTL<br><br>**ORDER** |

Plaintiff Paula Hughes challenges the Social Security Administration's ("SSA") determination that she does not qualify for disability insurance benefits or supplemental income. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that determination. The Court has reviewed the briefs (Doc. 22, "Pl. Br."; Doc. 23 "Def. Br."; and Doc. 24, "Reply") and the Administrative Record (Doc. 21, "R."). Plaintiff also filed a "Motion to Add Evidence." (Doc. 25.) For the following reasons, the Court affirms the Administrative Law Judge's ("ALJ") denial of Plaintiff's benefits application and denies Plaintiff's motion to add evidence. (Doc. 25.)

**I.   BACKGROUND**

Plaintiff filed an Application for Disability Insurance Benefits on February 7, 2017. (R. at 271.) Plaintiff alleged the onset of disability was January 20, 2017. (R. at 279.) Plaintiff's claim was denied initially and again on reconsideration. (*See* R. at 28, 117, 134, 157.) Plaintiff appeared before the ALJ for a hearing regarding her claim on July 11, 2019. (R. at 54.) The ALJ issued an unfavorable decision on September 4, 2019. (R. at 25.) On

February 11, 2021, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the agency's final decision. (R. at 1–4.) The ALJ reviewed the entire record, including Plaintiff's medical records, Plaintiff's own testimony, and the testimony of a vocational expert. (R. at 28–30, 35.) Upon considering the medical records and opinions, the ALJ evaluated the Plaintiff's disability based on the following severe impairments: degenerative disc disease of the cervical spine and lumbar spine, and obesity. (R. at 31.)

At step three of the five-step sequential analysis, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 33.) The ALJ then calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform medium work as defined in 20 C.F.R. §§ 404.1567(C) and 416.967(c) except the [Plaintiff[ can lift and carry 50 pounds occasionally, 25 pounds frequently, stand and walk for 6 hours in an 8 hour day, and sit for 6 hours in an 8 hour day. The [Plaintiff] can frequently stoop, kneel, crouch, crawl, and climb ramps or stairs, and can occasionally climb ladders, ropes, or scaffolds. The [Plaintiff] can frequently handle with the left upper extremity, and she must avoid concentrated exposure to extreme temperatures, humidity, and vibration.

(R. at 35.) Based on the evidence, the ALJ found, at step five, that Plaintiff "is capable of performing past relevant work as a certified nursing assistant, companion, spa room attendant, child care provider, hair braider, and housekeeper" which does not require any "work-related activities precluded by [Plaintiff's RFC]." (R. at 39.) The ALJ therefore concluded that Plaintiff was not disabled from the alleged disability onset date through the date of the decision. (R. at 40.)

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, a district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability

determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.*  To determine whether substantial evidence supports a decision, a court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).  Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The reviewing court should "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).  Even when the ALJ commits legal error, the reviewing court must uphold the decision where the error is harmless. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  "An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Id.* (citations and internal quotation marks omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a).  The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).  At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii).  If not, the claimant is not disabled, and the inquiry ends. *Id.*  If so, the ALJ continues to step three.  There, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.*

§ 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four, where she assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step. There, she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If the claimant can perform such work, she is not disabled. *Id.* If she cannot, she is disabled. *Id.*

## III. DISCUSSION

Plaintiff brings eleven issues for this Court's consideration. (Pl. Br. at 1–3.) She alleges the ALJ erred in his determination that (1) she was not disabled; (2) she engaged in substantial gainful activity during the impairment period; (3) she suffered from degenerative disc disease of the cervical and lumbar spine and obesity; (4) she had additional impairments; (5) the combination of impairments does not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404; (6) treatment for her left wrist condition lasted five months; (7) Dr. James Huddleston found Plaintiff to be moderately emotional; (8) Plaintiff has the RFC to perform medium work; (9) treating physician Dr. Matthew Parker was given no weight; (10) Plaintiff is capable of performing past relevant work; and (11) Plaintiff has not been under a disability during the relevant time period. (*Id.*) In an effort to streamline, the Court will group some of Plaintiff's allegations together.

### A. Issue Two

Plaintiff contends that her 2018 earnings were $23,634.96, which is below the Windfall Elimination Provision threshold. (Pl. Br. at 8.) The ALJ determined that Plaintiff worked after the alleged disability onset date. (R. at 32.) The ALJ evaluated Plaintiff's 2018 earnings—$23,634.69—and determined that it was "well above the threshold to presumptively qualify her work during 2018 as substantial gainful activity." (R. at 30–31.)

If a claimant has engaged in substantial gainful activity since filing for benefits, then

- 4 -

claimant cannot be found to be disabled regardless of her medical condition. 20 C.F.R. §§ 404.1520(b), 416.920(b). A claimant has the burden to prove she has not engaged in substantial gainful activity "for a continuous period of not less than 12 months." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194–95 (9th Cir. 2004) (citing 42 U.S.C. § 423(d)(1)(A)). The existence of earnings over the statutory minimum creates a presumption of substantial gainful employment. 20 C.F.R. §§ 404.1574(b)(2), 404.1575(b)(2); *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990). But the presumption may be rebutted if a claimant demonstrates an "inability to be self-employed or to perform the job well, without special assistance, or for only brief periods of time." *Id.*

Holding a series of jobs constitutes substantial gainful activity when they are held for a significant duration. *Tylitzki v. Shalala*, 999 F.2d 1411, 1415 (9th Cir. 1993) (finding a claiming engaged in substantial gainful activity when he could maintain a series of jobs each lasting almost a year). In contrast, a claimant is not engaged in substantial gainful activity when he or she can work full-time "but is incapable of sustaining employment for a period of longer than two months." *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 693 (9th Cir. 1999). Work activity is considered gainful when it is done for profit. 20 C.F.R. §§ 404.1572(b), 416.972(b). The SSA's guidelines establish that earning more than $1,180 per month in 2018 is considered engaging in substantial gainful activity.[1]

Plaintiff does not dispute that she earned $23,634.69 in 2018. (Pl. Br. at 8.) Using this annual income, and averaging it over a twelve-month period as required by 20 C.F.R. § 404.1574(b)(2), Plaintiff's monthly income in 2018 was $1,969.55.[2] Because Plaintiff's average monthly income of $1,969.55 exceeds the SSA's guideline income of $1,180, the ALJ did not err in determining Plaintiff was engaged in substantial gainful activity in 2018.

**B.     Issues Three, Four, and Five**

Plaintiff challenges the ALJ's decision at Step Two of his analysis, specifically, his

---

[1] *See* Social Security Administration, *Substantial Gainful Activity*, https://www.ssa.gov/oact/cola/sga.html (last visited April 29, 2022).
[2] The Court calculated this number by dividing $23,634.69 (Plaintiff's annual income) by 12 to arrive at an average monthly income.

- 5 -

finding that Plaintiff has the severe impairments of degenerative disc disease of the cervical spine and the lumbar spine and obesity, as well as diabetes mellitus, hypertension, a left wrist contusion, a depressive disorder, and an anxiety disorder.  (Pl. Br. at 2, R. at 31.) Plaintiff likewise requests that the Court review a number of record citations for accuracy. (Reply at 6.)[3]  The Court has reviewed the administrative record in its entirety.

The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "To establish whether [s]he qualifies for benefits, [Plaintiff] has the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193–94 (9th Cir. 2004) (quoting 42 U.S.C. § 423(d)(1)(A)).  "A severe impairment is one that affects an individual's ability to perform basic work-related activities."  SSR 16-3p, 2017 WL 5180304, at *11.  "At step 2 of the sequential evaluation process, [SSA] determine[s] whether an individual has a severe medically determinable physical or mental impairment or combination of impairments that has lasted or can be expected to last for a continuous period of at least 12 months." *Id.*  It is the claimant's burden to prove disability at this step.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "The mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).

Here, the ALJ found sufficient objective evidence that Plaintiff's degenerative disc disease of the cervical spine and lumbar spine and obesity "significantly limit her ability to perform basic work activities."  (R. at 31.)  The ALJ also considered Plaintiff's alleged diabetes mellitus, hypertension, left wrist contusion, depressive disorder, and anxiety disorder.  (*Id.*)  As to these impairments, the ALJ found that "the objective evidence shows that these conditions and their symptoms are mild in degree and intermittent in duration."

---

[3] A number of the record citations that Plaintiff asks the Court to review are from Defendant's summary of medical evidence in its response brief.  (*See* R. at 2–5.)  In the current procedural posture, this Court does not assess the accuracy of Defendant's brief; rather, the role of this Court is to assess the accuracy of the ALJ's decision.

(*Id.*)

Substantial evidence supports the ALJ's categorization Plaintiff's severe and non-severe impairments. Plaintiff fails to carry her burden of showing that the non-severe impairments were disabling. (*See* Pl. Br. at 5–7.) First, as to the diabetes mellitus, the ALJ noted that "[p]roviders found the [Plaintiff's] diabetes was 'without complication'" and did not require use of insulin. (R. at 31, *quoting* R. at 861, 875.) Plaintiff contends that this record evidence was from "The Pain Center where [she] went to receive [her] pain injections and have no medical dealings with diabetes." (Reply at 3, 5.) While it is true that some records from The Pain Center reference Plaintiff's diabetes (*see* R. at 786 (indicating Plaintiff is not being treated for diabetes)), the Plaintiff's other medical records show the exact same information. For example, Plaintiff's office treatment records from Adelante Healthcare twice report that Plaintiff has "Type 2 diabetes mellitus without complication, without a long-term current use of insulin." (R. at 861, 875.)

Second, the ALJ found Plaintiff "had no complications related to her high blood pressure, including chest pain, claudication, dyspnea, fatigue, or irregular heartbeat or palpitations." (R. at 31.) Plaintiff challenges the ALJ's reliance on an Adelante Healthcare record from February 27, 2017 (R. at 657) as not "supportive evidence" and "there is nothing in [the] evidence used [that] states [Plaintiff's] cardiovascular findings were otherwise normal." (Reply at 3.) To the contrary, the record Plaintiff herself cites indicates her respiratory system was negative for "chest pain, claudication, edema, and irregular heartbeat/palpitations," and though her hypertension "is currently getting worse," she "stopped taking her medication." (R. at 658.) *See* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, *9 ("[I]f the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."). Moreover, Plaintiff's heart rate and rhythm were regular with no murmurs, extra sounds, or edema. (R. at 659.) The ALJ did not err in finding Plaintiff's hypertension to be a nonsevere impairment.[4]

---

[4] Though the ALJ references a treatment record from 2014 (R. at 489), sufficient evidence nonetheless supports the assertion that Plaintiff's hypertension was a nonsevere

Similarly, Plaintiff fails to carry her burden of proving that her mental impairments caused an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193–94 (9th Cir. 2004) (quoting 42 U.S.C. § 423(d)(1)(A)). The ALJ found that though Plaintiff "was moderately emotional, mildly labile, and tearful, with a depressed mood," she "consistently denied experiencing suicidal ideation, has no history of longitudinal mental or behavioral health counseling, and no instances of admission to any psychiatric facilities." (R. at 32.) Moreover, Plaintiff "demonstrated no difficulty getting along with others." (*Id.*) Sufficient record evidence supports the determination. For example, Dr. James Huddleston, Psychologist, reported in May 2017 that Plaintiff was "moderately emotional" with a "friendly" attitude, and she had "good" concentration and attention. (R. at 730–31.) Dr. Huddleston diagnosed Plaintiff as suffering from "persistent depressive and somatic symptom disorders, of mild to moderate severity." (R. at 732.) But "[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews*, 10 F.3d at 680. And the SSA "will not use . . . a diagnosis[] or a medical opinion to establish the existence of an impairment." 20 C.F.R. § 404.1521. Instead, "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." *Id.* Plaintiff received normal results on multiple mini mental state examinations. (R. at 731, 788.) Also, Dr. Huddleston found Plaintiff's speech to be "logical and goal-directed," and she was "cooperative" with "direct and steady" eye contact. (R. at 730.) Accordingly, Plaintiff does not carry her burden of proof. Moreover, the ALJ did consider Plaintiff's mental and physical limitations in the RFC, so the Court finds any error—if it exists—is harmless.

Additionally, the Plaintiff contends that the ALJ "contradicted himself" by finding she "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404." (R. at 33.)

---

impairment. (R. at 657–59.)

While it is true that the ALJ considered her severe impairments of degenerative disc disease of the cervical spine and lumbar spine and obesity, as well as the nonsevere impairments of diabetes, hypertension, left wrist contusion, the ALJ properly found her impairments did not meet the criteria of listings 1.04, 12.04, or 12.06, or any of the other medical listings. To meet one of the listings, Plaintiff must meet all the medical criteria. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). Plaintiff here fails to carry her burden of showing she meets the medical criteria. Accordingly, the Court detects no error.

Plaintiff also challenges a number of medical records as "not supportive evidence" and "not within the onset dates." (Reply at 2–3.) But that is not the standard. The Court must only determine whether sufficient evidence supported the ALJ's determinations. *Orn*, 495 F.3d at 630. Substantial evidence supports the ALJ's decision here and as such, the Court will not set it aside. Finally, Plaintiff's general challenge to the ALJ's finding that "the combination of impairments does not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404" also fails. For the reasons explained herein, substantial evidence supports the ALJ decision.

**C.      Issue Six**

Next, Plaintiff asserts the ALJ erred in determining that her "left wrist condition appears to have lasted only four or five months in 2018." (Pl. Br. at 2.) Plaintiff asserts that "the ALJ showed no evidence [that her] contusion lasted only four or five months." (Pl. Br. at 8.) Instead, Plaintiff asserts that her "medical records show[] that [her] impairment of [her] left wrist worsened and lasted over 12 months." (*Id.*) The ALJ noted that Plaintiff had "a contusion of the left wrist in March 2017," which "caused only mild tenosynovitis, and a contemporaneous X-ray imaging scan of the left wrist was normal." (R. at 31–32.) The ALJ also found that "treatment for the left wrist condition appears to have lasted only four or five months in 2017." (R. at 32.) To dispute this evidence, Plaintiff cites a record from June 2017, four months after the alleged onset. (*See* Doc. 22-1, *citing* R. 757.) The remaining records that Plaintiff cites are not persuasive. (*Id.*) Plaintiff cites a record from 2019 where she reported "having pain in the left wrist" and "sometimes

having trouble holding things and even dropping things at times," but "[u]sing the TENS unit . . . is helping." (R. at 845.) Additionally, Plaintiff cites a record from 2018 showing she was diagnosed with De Quervain's syndrome. (R. at 876.) Even assuming that Plaintiff's wrist condition persisted into 2019, the Plaintiff has not carried her burden of proving that it affected her "inability to engage in any substantial gainful activity." *Batson*, 359 F.3d at1193–94; *see also* 42 U.S.C. § 423(d)(1)(A). To the contrary, Plaintiff engaged in substantial gainful activity and had "flexion and extension without pain." (R. at 878.) Dr. Paul Guider also found "no swelling," "no tenderness," and "full active extension." (R. at 801.) Accordingly, the Court finds no error in the ALJ's determination that Plaintiff's left wrist contusion was nonsevere.

**D.    Issues Seven and Nine**

Plaintiff challenges the ALJ's consideration of the opinions of Dr. James Huddleston and Dr. Matthew Parker. (Pl. Br. at 9.)

While "[t]he ALJ must consider all medical opinion evidence," for claims filed before March 27, 2017, such as this one, there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* This is so because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *see also Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc.*

*Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830–31). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ gave little weight to the opinions of Dr. Huddleston because "[t]here is no corroborating evidence" of moderate limitations. (R. at 38.) The ALJ explained that Dr. Huddleston assigned Plaintiff moderate limitations for her mental health impairments. (*Id.*) But the Plaintiff informed Dr. Huddleston that she took care of housework, fixed simple meals, and played board games with her son, in addition to working one to three days per week as a housekeeper. (*Id.*, R. at 728.) The ALJ found that the evidence actually supported no more than mild limitations. (R. at 38.) The Court agrees with the ALJ. Plaintiff's medical records show Plaintiff has "never been hospitalized for psychiatric treatment or treated with psychotropic medications." (R. at 730.) She also had "good" attention and concentration, "no difficulty understanding questions and requests," her speech was "logical and goal-directed," and she "denied history of sensory/perceptual disturbance" and "delusional/paranoid thought." (*Id.*) Most importantly, she scored in the normal range on a Mini Mental State Examination. (R. at 731.) Accordingly, these specific and legitimate reasons adequately support the ALJ's decision that Plaintiff's mental impairments were not moderate.

The Plaintiff also challenges the ALJ's rejection of the opinion of treating physician Dr. Parker, a doctor at The Disability Help Center. (Pl. Br. at 6–7.) The ALJ gave no weight to Dr. Parker's opinion because he provided his opinion in March 2016, which was before the Plaintiff's alleged onset date in January 2017. (*Id.*; *see* R. at 636–43.) Therefore, the ALJ rejected his opinion because it "does not consider the [Plaintiff's] objective treatment evidence since the alleged onset date." (*Id.*)

The Plaintiff contends that Dr. Parker is her primary care doctor, and he performed

another assessment of her in October 2019. (Pl. Br. at 6.) This second assessment was also outside the relevant time period. (*See* R. at 38.) The ALJ's decision was made in September 2019, the month prior to Dr. Parker's second opinion. The relevant time period for the ALJ to consider is between the Plaintiff's claimed onset date and the date of last insured. *See Lair-Del Rio v. Astrue*, 380 Fed. App'x 694, 695–96 (9th Cir. 2010). The ALJ does not need to consider medical opinion evidence from outside the relevant time period. *See id.* (affirming an ALJ's decision to not consider a letters written from doctors written after the relevant time period). Plaintiff provides no support for her contention that Dr. Parker should have been greater weight beyond the fact that he was listed on her medical records as her primary medical care provider. (Pl. Br. at 7.) But the fact that Dr. Parker was listed on Plaintiff's other records does not change the weight of his opinion, and the ALJ adequately discussed specific reasons for rejecting Dr. Parker's opinion.

### E. Issues Eight and Ten

Next, Plaintiff challenges the ALJ's finding that she has an RFC to perform medium work and she is capable of performing her past relevant work. (Pl. Br. at 3.) Specifically, Plaintiff asserts that "there is no supporting evidence" of this conclusion and "there is no way [she] can perform any of [her] past work with lumbar stenosis and [a] left wrist contusion and [] arthritis." (Pl. Br. at 9.) To the contrary, sufficient evidence supports the ALJ's decision and the Court finds no error.

The ALJ considered the entire longitudinal treatment record for the relevant time period, the testimony of a vocational expert, and Plaintiff's subjective symptom testimony. (R. at 30–39.) The Court finds that adequate evidence supports the ALJ's determination, such as Plaintiff's normal functioning during physical examinations, no difficulty walking, and her activities of daily living. (*See* R. at 36.)

In calculating Plaintiff's RFC specifically, the ALJ considered Plaintiff's alleged symptoms, her spine condition, and obesity, and appropriately limited the RFC to medium work to account for her conditions. For example, the ALJ limited the Plaintiff to sit for six hours in an eight hour day, and only occasionally climbing ladders, ropes, or scaffolds.

(R. at 36.) Plaintiff's argument—that she cannot work and cannot perform any past work—is not persuasive. "It is clear that it is the responsibility of the ALJ, not the claimant's physician [or the claimant herself], to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Here, the ALJ properly determined Plaintiff's RFC and the Court finds no error.

### F. Issues One and Eleven

Finally, Plaintiff challenges the ALJ's finding that she is not disabled and that she has not been under a disability during the relevant time period. (R. at 2–3.) The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn*, 495 F.3d at 630. Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* As explained above, substantial evidence supports the Commissioner's disability determination at each step in the process. *Id.* Accordingly, the Court finds that the ALJ did not err in finding Plaintiff not disabled and not under a disability during the relevant time period. The ALJ's decision is affirmed.

### G. Motion to Supplement

In addition to her opening brief and reply brief, Plaintiff filed a Motion to Add Evidence, which the Court construes as a motion to supplement the record. (Doc. 25.) Plaintiff seeks to supplement the record with a secondary SSA determination, where she was found disabled in July 2021. (Doc. 25 at 4.) This secondary SSA determination found that Plaintiff was disabled on September 5, 2019, the day after the ALJ's decision pending before this Court. (*Id.*)

A district court may only base its judicial review of an ALJ's decision "upon the pleadings and transcript of the record." 42 U.S.C. § 405(g). In a social security case, an ALJ has an independent "duty to fully and fairly develop the record and assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal citation and quotations omitted). The ALJ's duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to

allow for proper evaluation of the evidence." *Ford*, 950 F.3d at 1156 (quoting *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001)). The ALJ may discharge this duty in several ways, including keeping the record open to allow a plaintiff to supplement the record. *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).

Here, the record is neither ambiguous nor inadequate to allow for this Court's proper evaluation of the evidence before the ALJ at the time of his decision. Plaintiff's requested supplement covers a period of time not relevant to the current case and is not subject to this Court's review. Moreover, Plaintiff fails to fulfill her burden of showing "there is new evidence which is material and that there is good cause for [the ALJ's failure] to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Here, Plaintiff fails to show that the evidence is "material" to the disability determination before the ALJ in this case, with distinct factual circumstances and the prior SSA guidelines in place at the time of the ALJ's determination. *See* 85 Fed. Reg. 78164. Accordingly, Plaintiff's motion to supplement is denied. (Doc. 25.)

## IV. CONCLUSION

**IT IS ORDERED denying** Plaintiff Paula Hughes' Motion to Supplement. (Doc. 25.)

**IT IS FURTHER ORDERED affirming** the Administrative Law Judge's September 4, 2019 decision (R. at 26–40), as upheld by the Appeals Council on February 11, 2021 (R. at 2–11).

**IT IS FINALLY ORDERED** directing the Clerk of the Court to enter judgment consistent with this Order and close this case.

Dated this 16th day of August, 2022.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge